LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERTO DE IORIS and ANTONIO JEFFERSON, *on behalf of themselves, FLSA Collective Plaintiffs, and the Class,*<br><br>        Plaintiffs,<br><br>    v.<br><br>CITIBANK, N.A.,<br><br>        Defendant. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiffs, ROBERTO DE IORIS and ANTONIO JEFFERSON ("Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendant CITIBANK, N.A. ("Defendant") and state as follows:

<u>**INTRODUCTION**</u>

1.      Plaintiffs allege that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), they and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including overtime, due to time shaving, (2) liquidated damages, and (3) attorneys' fees and costs.

2.      Plaintiffs further allege that, pursuant to the State wage laws where Defendant does business, Plaintiffs and others similarly situated are entitled to recover from Defendant: (1) unpaid

wages, including overtime, due to time shaving; (2) statutory penalties; (3) liquidated damages; (4) attorneys' fees and costs, and (5) Plaintiffs further seek an injunction requiring that Defendant notify all similarly situated employees and former employees that the arbitration provision within Citibank's Handbook lacks key contractual provisions necessary to the formation of a binding agreement.

3.      Defendant CITIBANK, N.A. offers banking and financial services across the United States while operating and setting nationwide policy from its joint headquarters located at 388 Greenwich Street, New York City, NY 10013.  From their New York headquarters, Defendant set wage policies for its approximately 645 branches which are located across the United States. *See* **Exhibit A** – 2024 Form 10-Q page 18.

4.      Plaintiffs, FLSA Collective Plaintiffs, and putative Class members, who are all current and former employees employed by Defendant throughout the United States as business bankers, personal bankers, private client relationship managers, and operations officers, and other similar positions, were victims of Defendant's underpayment of wages, including overtime. Defendant instituted a nationwide policy of requiring Plaintiffs, FLSA Collective Plaintiffs, and putative Class members to self-report false start times, end times, and/or times for meal breaks. As instructed by management, Plaintiffs, FLSA Collective Plaintiffs, and putative Class members would self-report false hours but would work beyond that reported time to complete all required work such as their quotas, which were stylized as "CITIMAX performance targets" or "hurdles," in order to avoid being subject to productivity reviews and possible reprimand/termination.

5.      Plaintiffs bring this wage and hour class action on behalf of themselves and all persons who, during the applicable limitations period, up to and including the present, were

similarly underpaid by Defendant in violation of protections afforded under the FLSA, and the laws and regulations passed in the following states:

1) Alaska: Alaska Wage and Hour Act, Alaska Statute §23.10.050 *et seq.*;

2) Arizona: Arizona Fair Wages and Healthy Families Act, A.R.S. § 23-340 *et seq.*, and the Arizona Minimum Wage Act Practice and Procedure A.A.C. R20-5-1201 *et seq.*;

3) Arkansas: Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et seq.*;

4) California: California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and the California Labor Code and relevant Industrial Welfare Commission Wage Order;

5) Colorado: Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 *et seq.,* and the Colorado Minimum Wage Act, Colo. Rev. Stat. § 8-6-101 *et seq.*;

6) Connecticut: Connecticut Wage Act Conn. Gen. Stat. §§31-58, *et seq.*;

7) Delaware: Delaware Minim Wage Law, Delaware Code Title 19-90 *et seq.*;

8) District of Columbia: District of Columbia Minimum Wage Act Revision Act, D.C. Code § 32-1001 *et seq.*;

9) Florida: Florida's Unpaid Wages Statute, Fla. Stat. 448.08 *et seq.*;

10) Georgia: Georgia Minimum Wage Law, Official Code of Georgia Annotated O.C.G.A. § 34-4 *et seq.*;

11) Hawaii: Hawaii Payment of Wages and other Compensation, Hawaii Revised Statutes Title 21 § *388-1 et seq.;*

12) Idaho: Idaho the Minimum Wage Law 44-1501 *et seq.*, Hours Worked Act §44-1201 *et seq.*, and the Liens, Mortgages and Pledges, Idaho Code § 45-601 *et seq.*;

13) Illinois: Illinois Labor Laws, 820 ILCS 105 *et seq.*;

14) Indiana: Indiana Wages Hours and Benefits, Ind. Code §22-2-2 *et seq.* Indiana Frequency of Wage Payments Ind. Code §22-2-5 *et seq.*;

15) Iowa: Iowa Wage Payment Collection Law, Iowa Code §91A *et seq.*;

16) Kansas: Kansas Labor and Industries Law, Kan. Stat. Ann. §44-1201 *et seq.*;

17) Kentucky: Kentucky Wage Statutes, K.Y. Rev. Stat. Ann. §§ 337.275 *et seq.*;

18) Louisiana: Louisiana's Wage Payment Act, Louisiana Revised Statutes §23:631 *et seq.*;

19) Maine: Maine Employment Practices Act, 26 Me. Rev. Stat. §§ 621-A, 626, 626-A, & 629, and the Maine Minimum Wage and Overtime Law, 26 Me. Rev. Stat. §§ 664 & 670;

20) Maryland: Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*, and the Maryland Wage Payment Collection Law, Lab. & Empl. § 3-501 *et seq.*;

21) Massachusetts: Massachusetts Minimum Fair Wage Law, Mass. Gen. L. ch. 151, §1A *et seq.*;

22) Michigan: Michigan Workforce Opportunity Wage Act, MCL §§ 408.411, *et seq.*;

23) Minnesota: Minnesota Fair Labor Standards Act, Minn. Stat. § 177.25, and the Minnesota Payment of Wages Act, Minn. Stat. § 181.101 *et seq.*;

24) Missouri: Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500 *et seq.*;

25) Montana: Montana Minimum Wage and Overtime Compensation Act, MCA § 39-3-401 et seq., and the Montana Payment of Wages Law, MCA §39-3-201 *et seq.*;

26) Nebraska: Nebraska's Wage and Hour Act, Neb. Rev. Stat. § 48-1201 *et seq.*, and the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 *et seq.*;

27) Nevada: Nevada Minimum Wage Amendment of the Nevada Constitution, Nev. Const. art. 15, § 16, and the Nev. Rev. Stat. Chapt. 60,

28) New Hampshire: New Hampshire Minimum Wage Law, N.H. Rev. Stat. § 279:1 *et seq.*;

29) New Jersey: New Jersey Wage Payment Law, N.J.S.A. §§ 34:11-4.1 *et seq.*; and the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-56a *et seq.*;

30) New Mexico: New Mexico Minimum Wage Law, N.M. Stat. Ann. §50-4 *et seq.*;

31) New York: New York Labor Law, Article 19 § 650 et seq., and Article 6 § 190 *et seq.*;

32) North Carolina: North Carolina Wage and Hour Act, N.C.G.S. § 95-25.1, *et seq.*;

33) North Dakota: North Dakota Labor and Employment Law., N.D. Cent. Code 34-01 *et seq.*, and the North Dakota Minimum Wage and Work Conditions Order N.D. Ain Code §4602-07-01 *et seq.*;

34) Ohio: Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01 *et seq.*;

35) Oklahoma: Oklahoma General Wage Law, O.S. §§40-165.1. *et seq.*;

36) Oregon: Oregon Minimum Wage Law, Oreg. Rev. Stat. §51-653, and the Oregon Rules Regulating Minimum Wage, Overtime and Working Conditions OAR 839-020-0000, *et seq.*;

37) Pennsylvania: Pennsylvania Minimum Wage Act 43 Pa. Cons. Stat. § 333.101 *et seq.*;

38) Puerto Rico: Puerto Rico Working Hours and Days Laws, 29 L.P.R.A. §§271, *et seq.*;

39) Rhode Island: Rhode Island Minimum Wage Act, R.I. Gen. Laws §§ 28-12-1, et seq., and the Rhode Island Wages Act, R.I. Gen. Laws §§ 28-14-1, et seq.;

40) South Carolina: South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.*;

41) South Dakota: South Dakota Labor and Employment Laws, S.D.C.L. 60-1-1, *et seq.*;

42) Texas: Texas Minimum Wage Act, Texas Labor Code § 62.001 *et seq.*;

43) Vermont: Vermont Wages and Medium of Payment Laws, 21 V.S.A. §§341, *et seq.*;

44) Virginia: Virginia Minimum Wage Act, VA Code § 40.1 *et seq.*;

45) Washington: Washington Minimum Wage Act, R.C.W. 49.46.005, *et seq.*; and Washington Minimum Wage Rules, WAC 296-126 *et seq.*;

46) West Virginia: West Virginia Minimum Wage and Maximum Hours Act, W. Va. Code §25-5C-1, *et seq.*;

47) Wisconsin: Wisconsin Hours of Work and Overtime Rules, Wis. Admin. Code, §§ DWD 272.01 et seq. and 274.01 *et seq.*; and

48) Wyoming: Wyoming Minimum Wages, W.S. 1977 §§27-4-201, et seq. and Collection of Unpaid Wages, §§27-4-501, *et seq.*

6.    Additionally, at all times relevant to this action, Defendant failed to compensate employees when they clocked-in-and-out for short breaks lasting anywhere between 1-minute to 20-minutes in violation of 29 C.F.R. § 758.18 and State wage laws.

7.    To the extent that gap-time claims (claims for unpaid wages for hours worked up to forty which do not implicate statutory minimum wage laws) or claims seeking damages for failure to pay for all hours of work, are not covered by the protection of a State's wage laws, Plaintiffs further allege that they and others similarly situated are entitled to recover from Defendant, the following pursuant to breach of contract and unjust enrichment: (1) wrongfully withheld or diverted payments, (2) punitive damages due to egregious conduct, and (3) attorneys' fees and costs.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

9.    Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 because the Defendant is headquartered in this District, and all the events, witnesses, policies, and procedures giving rise to this Complaint emanated from this District.

**DEFENDANT'S HANDBOOK'S ARBITRATION PROVISION**

10.    Defendant maintains the attached arbitration provision as part of their handbook. *See* **Exhibit B**, Defendant's Handbook's Arbitration Provision.

11.    Despite this arbitration provision, no agreement to arbitrate exists. Defendant's arbitration provision is missing a key contractual element with regard to formation.

12.    A basic tenet of contract is that there may only be the formation of an agreement if such an agreement may be enforced by either party if breached. "Unless both parties to a contract are bound, so that either can sue the other for a breach, neither is bound." *Schlegel Mfg. Co. v. Cooper's Glue Factory*, 231 N.Y. 459, 462 (1921). "If the promisor is free to perform it or not, as he wills, a promise is wholly illusory and will not be enforced. The promises of neither party are binding unless those of both are obligatory." *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 325 (S.D.N.Y. 2014).

13.    Defendant's arbitration provision may only be enforced by Defendant.

14.    No agreement was formed because the agreement lacks consideration to Plaintiffs and, therefore, Plaintiffs received no benefit from the supposedly bargained for deal. The agreement lacks consideration as in the event of Defendant's breach, Plaintiffs simply have no remedy. Traditionally, a party has at least one of the following three remedies to a breach: (i) compensatory damages, (ii) injunctive relief, or (iii) reimbursement for payments made by the non-breaching party to cover contractual expenses.

15.    If Plaintiffs sought to arbitrate their claims against Defendant, but Defendant refused to pay filing fees and arbitration costs to the American Arbitration Associate ("AAA"), none of the above remedies would be available to Plaintiffs.

6

16.     One, a plaintiff may traditionally seek compensatory damages for a breached agreement.  However, Defendant's refusal to pay for arbitration could not justify compensatory damages as Plaintiffs would still be capable of vindicating all their rights in Federal Court.

17.     Two, a plaintiff may traditionally seek injunctive relief, forcing a defendant to comply with an agreement.  However, an Order from the Court compelling defendant to pay AAA for its arbitration services will not remedy the original failure to pay. As Plaintiffs' counsel has learned from similar breaches by other defendants, the AAA's policy is to ban a non-paying defendant from all future use of their services.  While the Court may issue an Injunctive Order forcing a defendant to pay for AAA's services, the Court may not force AAA to alter its policy and provide services to a previously banned party.  See **Exhibit C**, Example Letters from AAA Banning a Non-Paying Employer.

18.     Three, a plaintiff could pay for the AAA's services himself, and seek reimbursement from a defendant.  This relief is once again not available to Plaintiffs.  As Defendant is fully aware, Plaintiff (like most of Defendant's employees) is not a highly compensated worker capable of paying the tens of thousands of dollars necessary to retain the AAA's services to arbitrate individual claims.

19.     The lack of remedy detailed above has been acknowledged by the appellate Courts of this State.  *Asesd, LLC v. Vanguard Constr. & Dev. Co., Inc.*, 79 A.D.3d 418 (App. Div. 1st Dept.) ("[a]s the AAA's rules provide that the remedy for a party's refusal to pay its share of arbitration fees is for the [employee] to advance the [employer]'s share of the fees, that is petitioner's recourse here. **This Court cannot fashion another remedy.**") (emphasis added).

20.     The only remedy available to Plaintiffs is to advance Defendant's share of the arbitration fees.  As Plaintiffs' employer, Defendant is aware that employees advancing all fees to

AAA is an impossibility for Plaintiffs and similarly situated employees. *See, e.g., E.E.O.C. v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 448 F. Supp. 2d 458, 464 (E.D.N.Y. 2006) ($6,000 to $11,000 in estimated arbitration fees was prohibitively expensive regardless of claimant's income) (cited by *Balderas v. 8 Chelsea Corp.*, 2019 U.S. Dist. LEXIS 126661, at *7 n.4 (S.D.N.Y. July 29, 2019). Plaintiffs, who earned approximately $21.00 an hour, and similarly situated employees who earned similar wages, do not have the disposable income to advance the tens of thousands of dollars in AAA's arbitration fees required to maintain an action in that forum.

21.     The fact that supposed mutual arbitration agreements cannot be enforced by low-wage employees against their employer may be seen by the following cases:

a.  *Glenn Salazar v. The Bahche Inc.*, Case No. 21-cv-05257 (S.D.N.Y. 2021). In the *Bahche* matter, the plaintiffs/employees filed a case for unpaid wages against their former employer in federal court on September 21, 2021. *Id.* at Dkt. 1. On December 30, 2021, the plaintiffs dismissed the federal action in light of defendants' production of an arbitration agreement and defendants' threat to move to compel arbitration. *Id.* at Dkt 17, 19, 30. Despite demanding arbitration, once the defendants received a bill from the arbitrator, the defendants refused to pay and refused to move forward before the AAA. *Id.* at Dkt. 21, 30; *see also,* **Exhibit C** (Letters from AAA Regarding Defendants' Refusal to Pay). On March 28, 2022, the plaintiffs were forced to reopen the federal case. *Id.* at Dkt. 21. The plaintiffs of that matter sought recovery for the costs and fees expended due to the breach of the 'mutual arbitration agreement,' but the Court deemed no such recovery was warranted. *Id.* at Dkt 48. The plaintiff had no remedy for the breach other than an invalidation of the agreement.

b.  *Juan Lopez v. Thermo Tech Mechanical, Inc., et al*, Case No. 20-cv-09113 (S.D.N.Y. 2020). Like in *Bahche,* the plaintiff/employee in the *Thermo Tech* matter filed a case against their former employer for unpaid wages in federal court. The plaintiff's case was filed on October 30, 2020. *Id.* at Dkt. 1. Upon filing of the complaint in that matter, the parties set a case management schedule, engaged in discovery, and briefed a collective class certification motion. *Id.* at Dkt. 21, 33. Immediately after briefing a collective class certification motion, the defendants produced an arbitration agreement and demanded that the plaintiff arbitrate on an individual basis. *Id.* at Dkt. 42. In accordance with that agreement, the plaintiff dismissed the case and pursued his claims in arbitration. *Id.* After approximately 10 months in arbitration, defendants received a bill for $25,000, deemed that the arbitration costs were too high, and refused to pay for arbitration. *Id.* at Dkt. 57 ¶ 20; *see also* **Exhibit C**. The plaintiff was forced to reopen the case in federal court

and continue litigating in that forum. *Id.* at Dkt. 46.  No remedy was available to the plaintiff for the breach of this 'mutual arbitration agreement,' and the Court refused to even issue a sanction. *Id.* at Dkt. 104.

c.  *Nancy Torres v. Met Sunnyside Inc.*, AAA Case No. 01-22-0004-7614 (AAA 2022). In the *Met Sunnyside* matter, the plaintiff/employee elected to pursue her claims in arbitration pursuant to a mutual arbitration agreement.  Defendants refused to pay for the arbitration, and the matter was dismissed from the AAA's docket. *see* **Exhibit C.**  No remedy for this breach was available to the plaintiff, other than to act as if the mutual arbitration agreement never existed.

22.    Bilateral agreements, which are only enforceable by one party, lack the necessary consideration to be considered a contract.

23.    As Plaintiffs have no mechanism to enforce the supposedly mutual arbitration provision found in Defendant's handbook, no contract was formed.

## **PARTIES**

24.    Plaintiff ROBERTO DE IORIS ("Plaintiff IORIS") is a resident of Miami-Dade County, Florida.

25.    Plaintiff ANTONIO JEFFERSON ("Plaintiff JEFFERSON") is a resident of Cook County, Illinois.

26.    All of Defendant's branch locations are managed by the same executive management team operating from the same Headquarters in New York, which sets standardized policies and managerial training.  Further, each branch location is engaged in related activities, share common ownership, and have a common business purpose:

(a) Defendant CITIBANK, N.A. maintains a centralized payroll department and human resources department.  Defendant operates a single career page allowing interested persons to apply to positions relating to all branch Locations.  Despite listing open positions across the country, Defendant centralizes payroll

positions, marketing positions, executive management positions, IT positions, and other administrative roles at Defendant's headquarters in New York,

(b) When seeking leave or company assistance with other employment issues, employees are directed to contact the same central office, which evaluates requests, hires, fires, trains managerial employees, and sets company-wide policy.

(c) Plaintiffs and other employees were transferred between branch locations. When employees move to differing branch locations, they are subject to the same wage and hour policies and procedures established by Defendant. Plaintiff IORIS was routinely transferred between the following branch locations:

   a. Bryant Park Branch – 1065 6th Avenue, New York, NY 10018;
   b. Court Square Branch – 5 Ct. Square W, Queens, NY 11101;
   c. Fifth Avenue Branch – 666 5th Ave, New York, NY 10103;
   d. Madison and 42nd Street Branch – 330 Madison Ave, New York, NY 10017; and
   e. Madison and 48th Street Branch – 12 W 48th Street, New York, NY 10036.

(d) Plaintiff IORIS was transferred to other nearby branch locations on an as-needed basis, such transfers would even occur mid-shift.

(e) Plaintiff JEFFERSON was similarly transferred between Branches on an as-needed basis. Specifically, Plaintiff JEFFERSON worked at the 8650 S Stony Is Ave, Chicago, IL 60617 Branch before he was transferred to the 9449 S Western Ave, Chicago, IL 60643 Branch in 2021. After 2021, he returned to the 8650 S Stony Is Ave, Chicago, IL 60617 Branch.

27.    Defendant CITIBANK, N.A. is a foreign business association organized under the laws of the State of South Dakota with a principal place of business located at 388 Greenwich

Street, New York, NY 10013 and an address for process of service in care of the C.T. Corporation System, 28 Liberty St. New York, NY 10005.

28.    At all relevant times, Defendant was and continues to be an "enterprise engaged in business" within the meaning of the FLSA and the state wage laws and the regulations passed thereunder.

29.    At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendant.

30.    Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## NATIONWIDE FLSA COLLECTIVE ACTION ALLEGATIONS

31.    Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all business bankers, personal bankers, private client relationship managers, and operations officers, among others, employed by Defendant on or after the date that is three years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

32.    At all relevant times, Plaintiffs and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them proper overtime wages at the rate of one-and-one-half times the regular rate of pay, due to time shaving. The claims of Plaintiffs stated herein are essentially the same as those of FLSA Collective Plaintiffs.

33.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

## NATIONWIDE RULE 23 CLASS ACTION ALLEGATIONS

34.     Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of themselves and a class of all business bankers, personal bankers, private client relationship managers, and operations officers, among others, employed by Defendant in the six (6) years and 228 days (pursuant to NY's Executive Order tolling during the COVID pandemic), or the relevant statutory period of each state's applicable labor law, prior to the filing of the Complaint in this case (the "Class").

35.     To the extent necessary, Plaintiffs will designate subclasses for each of the States where Defendant has employees.

36.     The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendant. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under F.R.C.P. 23.

37.     The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, because the facts on which the

calculation of that number rests presently within the sole control of Defendant, there is no doubt that there are more than forty members of the Class. The proposed Class includes a Subclass of employees employed by Defendant. The Subclass comprises Class members employed in the States of New York, California, and States with requirements to provide wage notice and earning statements to employees ("Wage Notice Subclass") who will have additional state law claims against Defendant. There is no doubt that the Subclass also contains more than forty (40) members. Plaintiff IORIS is a member of the Class and Subclass. Plaintiff JEFFERSON is a member of the Class.

38.     Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same practices of Defendant as alleged herein of: (i) failing to pay Class members wages, including overtime, due to Defendant's policy of requiring employees to self-report fewer hours than their work, (ii) failing to pay Class members for breaks lasting 20-minutes or less, and (iii) improperly subjecting Class members to a mutual arbitration provision, which is enforceable at Defendant's sole discretion.

39.     Due to the failure to include all hours of work in Class members compensation, paystubs, and wage notices, Plaintiff IORIS and Wage Notice Subclass members did not receive wage notices and wage statements which accurately stated Plaintiff IORIS' and the Wage Notice Subclass' rates of pay and hours worked as required by state laws and regulations.  Plaintiff IORIS' claims are also typical of those claims that could be alleged by any member of the Wage Notice Subclass, and the relief sought is typical of the relief that would be sought by each member of the Wage Notice Subclass in separate actions.

40.     Defendant's corporate-wide policies and practices affected all Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each

Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

41.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

42.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided

by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

43.     Defendant and other employers throughout the country violate state wage and hour laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

44.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.  Whether Defendant employed Plaintiffs and the Class within the meaning of state wage and hour laws;

b.  What are and were the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not pay the Class members properly;

c.  At what common rate, or rates subject to common methods of calculation, was and is Defendant required to pay Plaintiffs and Class members for their work;

d.  Whether Defendant properly notified Plaintiff IORIS and the Wage Notice Subclass members of their regular hourly rate, overtime rate, and hours worked;

e.  Whether Defendant properly compensated Plaintiffs and Class members for all hours worked, including overtime hours;

f.  Whether Defendant failed to compensate Plaintiffs and Class members for all hours worked;

g.  Whether Defendant failed to compensate for breaks lasting 20 minutes or less;

h.  Whether Defendant required or permitted Plaintiffs and Class members to work during uncompensated meal breaks;

i.  Whether Defendant paid Plaintiffs and the Class members the proper overtime wages at a rate that is at least one-and-one-half times the regular rate of pay for all hours worked in excess of forty each workweek;

j.   Whether Defendant provided to Plaintiff IORIS and Wage Notice Subclass members wage and hour notices, at date of hiring and as required thereafter under state wage and hour laws;

k.   Whether Defendant provided Plaintiff IORIS and Wage Notice Subclass members accurate wage statements with each payment of wages as required by state wage and hour laws; and

l.   Whether Defendant improperly subjected Plaintiffs and Class members to a mutual arbitration provision, which was enforceable at Defendant's sole discretion and, therefore, failed to create a binding contract as to Class members.

## STATEMENT OF FACTS

Plaintiff ROBERT DE IORIS

45.    On or about January 2015, Plaintiff IORIS was hired by Defendant to work as a personal banker at Defendant's Citibank branches throughout New York City and the surrounding boroughs.  In total, Plaintiff IORIS transferred internally and worked for at least six different Citibank branch locations within New York City.  In July 2018, Plaintiff IORIS was promoted to a Citigold Associate, otherwise known as a private client relationship manager. Plaintiff IORIS's employment with Defendant continued until around April 2019, when Plaintiff IORIS was terminated.

46.    While employed by Defendant, Plaintiff IORIS was scheduled to work from 8:30 a.m. to 5:00 p.m. working eight hours and thirty minutes per day, five days per week, for a total of approximately forty-two hours and thirty minutes per week. FLSA Collective Plaintiffs and Class members worked similar hours.

47.    From 2018 until his termination, Plaintiff IORIS was compensated on an hourly basis through bi-weekly checks. FLSA Collective Plaintiffs and Class members were similarly compensated similar hourly rates through bi-weekly checks.

Plaintiff ANTONIO JEFFERSON

48.    On or about November 2018, Plaintiff JEFFERSON was hired by Defendant to work as a teller at Defendant's Citibank branch located at 8650 S Stony Is Ave, Chicago, IL 60617. In January 2020, Plaintiff JEFFERSON was promoted to the position of personal banker.  Plaintiff JEFFERSON's employment relationship with Defendant was terminated in November 2023.

49.    Plaintiff JEFFERSON was scheduled to work from 9:00 a.m. to 5:30 p.m. working eight and a half (8.5) hours per day, five days per week. Additionally, Plaintiff JEFFERSON was scheduled to work on Saturdays from 9:00 a.m. to 1:30 p.m. for a total of four and a half (4.5) hours. In total, Plaintiff JEFFERSON worked approximately forty-seven (47) hours per week. FLSA Collective Plaintiffs and Class members worked similar hours.

50.    From the start of his employment to around January 2020, Plaintiff JEFFERSON was compensated at a rate of $21 per hour, with an annual wage increase of 1 dollar per hour. (i.e., $21 per hour in 2018, $22 per hour in 2019, and $23 per hour for the first month of 2020).

51.    Following Plaintiff JEFFERSON's promotion in January 2020 to the position of personal banker, his hourly compensation increased to approximately $25.50 per hour.

Plaintiffs', FLSA Collective Plaintiffs', and Class members' Wage and Hour Claims:

52.    Plaintiffs, FLSA Collective Plaintiffs, and Class members were not paid for all hours worked.

53.    At all relevant times, Plaintiffs, FLSA Collective Plaintiffs, and Class members, were classified as non-exempt employees entitled to overtime.

54.    Plaintiffs, FLSA Collective Plaintiffs, and Class members are all current and former employees working as business bankers, personal bankers, private client relationship managers, and operations officers, among others, for Defendant, and were victims of Defendant's

underpayment of wages, including overtime. Defendant instituted a nationwide policy of requiring employees to self-report scheduled start, end, and/or meal break times despite employees working hours beyond those times.

55.    For example, Plaintiffs, FLSA Collective Plaintiffs, and Class members would always be required to self-report meal breaks, but were never permitted a free and clear meal-break because their presence at Defendant's branch locations were required through lunch as they were the only employees authorized to perform numerous tasks such as approve certain withdrawals and deposits, perform overrides for Defendant's systems, or even open their branches' vault if necessary. Moreover, Plaintiffs, FLSA Collective Plaintiffs, and Class members were required to work through meals while clocked-out as employees were required to eat at their station, undergo mandatory training, respond to phone calls, and aid in customer requests. Despite employees like Plaintiffs never being permitted a free and clear meal-break, Defendant never compensated Plaintiffs and other employees for this time.

56.    Due to the failure to compensate for meal breaks, Plaintiffs, FLSA Collective Plaintiffs, and Class members were undercompensated for a half-hour for every day worked. For Plaintiff IORIS, who worked five days a week, Defendant's violation resulted in a failure to compensate two-and-a-half hours per week. For Plaintiff JEFFERSON, who worked six days a week, Defendant's violation resulted in a failure to compensate three hours per week.

57.    Additionally, Plaintiffs would clock out for a short, less than 20-minutes, rest breaks. However, they were not compensated for this time even though it is compensable work time under FLSA and State wage laws. FLSA Collective Plaintiffs and Class members were similarly not paid for these short rest breaks. The extent of the damages due to this violation can be calculated directly from Defendant's records for Plaintiffs, FLSA Collective Plaintiffs, and

Class members.  Plaintiff IORIS recalls that his managers routinely reprimanded employees for taking even a 10-minute bathroom break.

58.    Additionally, Plaintiff IORIS, FLSA Collective Plaintiffs, and Class members were required to self-report their scheduled start and end times.  Plaintiffs, FLSA Collective Plaintiffs, and Class members were victims of Defendant's policy which demanded that Plaintiff IORIS, FLSA Collective Plaintiffs, and Class members self-report their weekly scheduled time *exactly* regardless of their hours worked in excess of that schedule.  Specifically, Plaintiff IORIS was required to arrive at work at least 15 minutes before his shift to turn on the lights, turn on computers, prepare the vaults, and be briefed in a pre-shift meeting before his schedule.  As he was instructed to self-report his work time as being identical to his scheduled hours, Plaintiff IORIS was not compensated for this pre-shift work.  FLSA Collective Plaintiffs and Class members similarly engaged in work prior to their scheduled shifts, which was not compensated. Plaintiff IORIS was also routinely required to stay past his scheduled shift. Plaintiff IORIS was required to stay at least 45 minutes, and typically 75 minutes past his shift every day of work FLSA Collective Plaintiffs, and Class members similarly had to stay late after work and this post-schedule work time was not compensated.

59.    As a result of the pre-shift and post shift work, Plaintiff IORIS worked an average of 1.5 hours off-the-clock per day or a total of 7.5 hours per week. FLSA Collective Plaintiffs, and Class members were similarly deprived of compensable time due to Defendant's requirement that they self-report their weekly scheduled hours *exactly* regardless of their hours worked in excess of that schedule.

<u>Plaintiff IORIS's and Wage Notice Subclass Members' Improper Wage Notices and Earning</u>
<u>Statements:</u>

60.     Plaintiff IORIS and Wage Notice Subclass members never received proper wage notices from Defendant. They also did not receive accurate wage statements from Defendant.  41 of 50 States require employees to receive at each pay period paystubs with accurate information as to employees work hours and rates of pay.  These States include the following States where Defendant has branches: California, Connecticut, Maryland, New Jersey, New York, Pennsylvania, Virginia, Washington.

61.     The States of New York, Minnesota, and California have wage laws providing damages for the failure to provide accurate pay documents.  In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL and California Labor Code 226 LC-- Defendant knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff IORIS and Wage Notice Subclass Members at the beginning of their employment with Defendant.

62.     Defendant further violated the WTPA and California Labor Code 226 LC by failing to provide Plaintiff IORIS and Wage Notice Subclass Members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA and California Labor Code 226 LC. *See Shi Yong Li v. 6688 Corp*., 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp*., 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when

paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

63.      In failing to provide proper wage statements and notices, Defendant has failed to comply with the law in a manner that entails a concrete harm to an interest identified by the legislatures of New York, California, and Minnesota, As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

64.      Defendant knowingly and willfully operated their business with a policy of not providing proper wage notices and statements as required by NYLL and other state wage laws.

65.      In failing to provide proper wage statements and notices, Defendant has failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the State legislature of New York, Minnesota, and California. Defendant's failure to provide such notices trivializes the importance of these notices in protecting Plaintiff IORIS and Wage Notice Subclass Members interest in ensuring proper pay. Despite Defendant's conduct, there is a reason why the State legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B.

8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

66.     Here, Defendant's failure goes beyond generating a risk of harm to Plaintiff IORIS and Wage Notice Subclass Members.  Defendant's conduct actually harmed Plaintiffs and Wage Notice Subclass members.  Defendant's failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates and the failure to provide a wage notice properly listing the rate and frequency Plaintiff IORIS and Wage Notice Subclass Members  were entitled to get paid, deprived employees of the ability to contest Defendant's calculations, allowed Defendant to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff IORIS's and Wage Notice Subclass Members' rights.  This conduct ensured Defendant's ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law.  Moreover, Defendant's failure to provide wage notices allowed Defendant to hide the proper frequency of pay to employees.  Defendant's failure to provide a wage notice to employees allowed Defendant to hide their responsibility and deprive employees of timely compensation.

67.     Due to Defendant's failure to provide legally mandated notices such as earning statements and wage notices, Defendant was able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation.  The failure to provide notices continues to result in delayed payment of all proper wages owed to Plaintiff IORIS and Wage Notice Subclass Members.  This delayed payment caused Plaintiff IORIS and Wage Notice Subclass Members to struggle to timely pay bills and delay or forgo purchases.

68.     Further, the direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

69.     The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

70.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, at \*18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, \*21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at \*4 (S.D.N.Y. July 14, 2022)).

71.     Here, it is clear that Defendant's failure to provide Plaintiff IORIS and Wage Notice Subclass Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendant's automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendant submitted to the IRS on behalf of Plaintiff IORIS and Wage Notice Subclass Members. That, in turn, would have increased Plaintiff IORIS's and Wage Notice Subclass Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff IORIS with Article III standing.

72.     Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because

"[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id.* at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id.* Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id.* "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id.*

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

73.     The case at bar is somewhat different from *Coward* inasmuch as Defendant actually underpaid Plaintiff IORIS and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id.* Plaintiff IORIS and Wage Notice Subclass Members lost benefits by virtue of how Defendant reported their income, and how Defendant reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

74.     Whether or not any Plaintiff IORIS and Wage Notice Subclass Members are presently eligible for social security benefits is legally immaterial. *See id.* ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

75.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks

credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Calderon,* 999 F.2d 1101 at 1106.

76.    Here, the problem is not merely challenging but insurmountable. Plaintiff IORIS and Wage Notice Subclass Members cannot even attempt to have their earnings report corrected because Defendant *did* report what they actually paid Plaintiff IORIS and Wage Notice Subclass Members. The problem, rather, is that Plaintiff IORIS and Wage Notice Subclass Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff IORIS and Wage Notice Subclass members were irreversibly injured with respect to their social security benefits as soon as Defendant sent their W-2s to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

77.    Defendant knowingly and willfully operated their business with a policy of not providing proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of NYLL and other state wage laws.

78.    Defendant knowingly and willfully operated their business with a policy of not properly compensating either FLSA overtime rate (of time and one-half) or the State wages and overtime (of time and one-half) to Plaintiffs, FLSA Collective Plaintiffs, and Class members, including due Defendant's policy of time shaving.

26

79.     Defendant knowingly and willfully subjected Plaintiffs, FLSA Collective Plaintiffs, and Class members to time shaving of hours worked in violation of the FLSA and the State wage laws.

80.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs, and the Class, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## NATIONWIDE VIOLATION OF THE FAIR LABOR STANDARDS ACT

81.     Plaintiffs reallege and incorporate all the foregoing paragraphs as if fully set forth herein.

82.     At all relevant times, Defendant was and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

83.     At all relevant times, Defendant employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

84.     At all relevant times, Defendant had gross annual revenues in excess of $500,000.

85.     At all relevant times, Defendant had a policy and practice of failing to pay overtime wages to Plaintiffs and FLSA Collective Plaintiffs for hours worked in excess of forty (40) per workweek at the proper overtime rate that is at least one-and-one-half times the regular rate of pay, due to time shaving.

86.     Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of Defendant. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

87.     Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs for all hours worked, including overtime hours, when Defendant knew or should have known such was due.

88.     Defendant failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

89.     As a direct and proximate result of Defendant's willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

90.     Due to the intentional, willful and unlawful acts of Defendant, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime wages; unpaid wages, including overtime, due to time shaving; plus, an equal amount as liquidated damages.

91.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II
## VIOLATION OF THE NEW YORK LABOR LAW

92.     Plaintiff IORIS realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

93.     At all relevant times, Plaintiff IORIS and New York Class members were employed by the Defendant within the meaning of the NYLL, §§ 2 and 651.

94.     Defendant knowingly and willfully failed to pay Plaintiff IORIS and New York Class members for all hours worked, including hours worked over forty, due to timeshaving in violation of the NYLL

95.     Defendant knowingly and willfully violated Plaintiff IORIS' and New York Class members' rights by failing to pay overtime wages for hours worked in excess of forty (40) per workweek at the proper overtime rate that is at least one-and-one-half times the regular rate of pay, including due to time shaving, in violation of the NYLL.

96.     Defendant knowingly and willfully failed to provide wage and hour notices to Plaintiff IORIS and New York Class members, as required by NYLL § 195(1).

97.     Defendant knowingly and willfully failed to provide proper wage statements to Plaintiff IORIS and New York Class members with every wage payment, as required by NYLL § 195(3).

98.     Due to the Defendant's NYLL violations, Plaintiff IORIS and New York Class members are entitled to recover from Defendant their unpaid overtime wages; unpaid wages, including overtime, due to a policy of time shaving; statutory penalties; reasonable attorney's fees; and, costs and disbursements of the action.

## COUNT II
## VIOLATION OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT, 820 ILCS SECTION 115 ET. SEQ. (IWPCA) AND ILLINOIS MINIMUM WAGE LAW, 820 ILCS 105, ET SEQ.

99.     Plaintiff JEFFERSON realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

100.    At all relevant times, Plaintiff JEFFERSON and Illinois Class members were employed by Defendant within the meaning of the IWPCA and the IMWL.

101.    Defendant knowingly and willfully failed to pay Plaintiff JEFFERSON and Illinois Class members for all hours worked, including hours worked over forty, due to timeshaving in violation of the IWPCA and the IMWL.

102.    Defendant knowingly and willfully violated Plaintiff JEFFERSON's and Illinois Class members' rights by failing to pay overtime wages for hours worked in excess of forty (40) per workweek at the proper overtime rate that is at least one-and-one-half times the regular rate of pay, including due to time shaving, in violation of the IWPCA and IMWL.

103.    Due to the Defendant's IWPCA and IMWL and violations, Plaintiff JEFFERSON and Illinois Class members are entitled to recover from Defendant their unpaid overtime wages; unpaid wages, including overtime, due to a policy of time shaving; statutory penalties; reasonable attorney's fees; and, costs and disbursements of the action.

**COUNT IV**
**VIOLATION OF APPLICABLE STATE WAGE AND HOUR LAWS**
**(brought on behalf of a Rule 23 Class)**

104.    Plaintiffs realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

105.    At all relevant times, Class members were employed by Defendant within the meaning of the applicable state wage and hour laws, just as Plaintiffs was employed by Defendant under the meaning of the FLSA.

106.    Plaintiffs can represent the Class because the requirements of the FLSA and the requirements of the state labor laws enumerated earlier are identical for purposes of their overtime class claims.

107.    Plaintiffs can represent the Class because the requirements of the State wage law requirements enumerated earlier are identical for purposes of their Class wage claims.

108.    Defendant knowingly and willfully violated Plaintiffs and Class members' rights by failing to pay them all wages, including proper overtime compensation at rates of not less than one and one-half times the regular rate of pay, for each hour worked in excess of forty (40) hours in a workweek, due a policy of underreporting employees' hours in violation of the state wage and labor laws outlined above.

109.    Defendant knowingly and willfully failed to provide proper wage statements and notices to Wage Notice Subclass members, as required under the laws of New York State, California, and Minnesota.

110.    Due to Defendant's State law violations, Plaintiffs, Class members, and  Wage Notice Subclass members are entitled to recover from Defendant their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

111.    In addition to violations of State Labor overtime laws under which Plaintiffs bring class (not individual) claims, Defendant violated State provisions requiring employers to pay employees all wages owed.  Since overtime wages are owed under the FLSA, these laws encompass class members' claims just as much as would explicit overtime requirements.  These state law provisions include the following:

> [e]ach employer in [Arizona] shall designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to his employees [and that] [e]ach employer shall, on each of the regular paydays, pay to the employees . . . all wages due the employees up to such date . . . .[o]vertime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period."

Ariz. Rev. Stat. § 23-351(C); *see also Weeks v. Matrix Absence Mgmt.*, 2022 U.S. Dist. LEXIS 30849 (D. Ariz. 2022)

> Upon prevailing in an action brought pursuant to this section, aggrieved persons shall recover the full amount of any unpaid back wages unlawfully withheld plus the same amount as liquidated damages and shall be awarded reasonable attorney's fees and costs.

Florida Minimum Wage Act, Fla. Stat. § 448.110(6)(c)(1)

> Damages recoverable by an employee. When it has been shown that an employer has intentionally failed to pay an employee wages or reimburse expenses pursuant to section 91A.3, whether as the result of a wage dispute or otherwise, the employer shall be liable to the employee for any wages or expenses that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary. In other instances the employer shall be liable only for unpaid wages or expenses, court costs and usual and necessary attorney's fees incurred in recovering the unpaid wages or expenses.

Iowa Wage Payment Collection Law, Chapter 91A.8; *see also Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 883 (N.D. Iowa 2008) ("[T]he FLSA may be used to establish an employee's right to a certain amount of wages under the IWPCL and an employer's violation of the IWPCL for not paying all wages due its employees." (quotation omitted))

> (a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
> (b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

Louisiana Wage Payment Act, La. R.S. § 23:631(A)(1)

> An employee having a claim for wages which are not paid within thirty days of the regular payday designated or agreed upon may institute suit for such unpaid wages in the proper court. If an employee establishes a claim and secures judgment on the claim, such employee shall be entitled to recover the full amount of the judgment and all costs of such suit, including reasonable attorney's fees.

Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1231(1)

> In case of any failure to pay wages due to an employee as required by Section 41-10-40 or 41-10-50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow. Any civil action for the recovery of wages must be commenced within three years after the wages become due.

South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-80(C).

112. The Florida Minimum Wage Act has a pre-suit notice requirement. Fla. Stat. § 448.110(6)(a). However, Plaintiffs invokes the Florida Minimum Wage Act not only in his individual capacity but to bring class claims on behalf of class members residing in Florida. Thus, Plaintiffs are not personally required to provide Defendant with a pre-suit notice as to each class member. As to these absent Florida class members, courts in Florida have "found no authority mandating that a detailed pre-suit notice for each and every putative class member be served on [d]efendants under § 448.110(6) prior to the filing of a putative class action under the FMWA." *Griffith v. Landry's, Inc*., 2016 U.S. Dist. LEXIS 196397, *12 (M.D. Fla. May 17, 2016).

113. The Third Circuit Court of Appeals has clearly demonstrated the untenability of any such requirement:

> We raise the following questions to further demonstrate the error of the proposed framework adopted by our dissenting colleagues. If the dissent's "colorable legal claim" test is a threshold inquiry for commonality, why should the court not consider every potential disqualifier from one's having a "colorable legal claim?" For example, in any class certification case, should the court consider whether all potential class members complied with applicable pre-notice requirements under the relevant substantive law? Should the court consider whether every potential class member exhausted her administrative remedies under the relevant substantive law? Should the court evaluate whether each class member's claim complies with the applicable statute of limitations? The answers to these questions most certainly implicate whether a litigant, in a class action or otherwise, has a "colorable legal claim." These questions, moreover, show how flawed, from an administrative, logical, and practical standpoint, the dissent's and objectors' approach really is. No class would ever be certified because it would be impossible to demonstrate that every class member has a "colorable legal claim." (Dissenting Op. at 10.) More than this, it would gut commonality, for, most certainly, individual issues would then predominate. There would simply be no class that could meet this commonality and predominance test.

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 310 (3rd Cir. 2011).

114.    Some states' wage and hour or wage payment statutes may prescribe means other than class actions for pursuing common claims.  Any state restrictions on class actions are irrelevant, however, as this case was filed in federal court, where the Federal Rules of Civil Procedure hold. See *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400, 130 S. Ct. 1431, 1438 (2010) (F.R.C.P. 23 authorizes "class actions across the board" notwithstanding state law restrictions on class actions); *Dremak v. Iovate Health Scis. Grp., Inc. (In re Hydroxycut Mktg. & Sales Practices Litig.)*, 299 F.R.D. 648, 654 (S.D. Cal. 2014) ("[A]pplication of Rule 23 to Plaintiffs' [FBPA] claims does not run afoul of the Rules Enabling Act. Rule 23 governs Plaintiffs' claims, and Plaintiffs' claims are not subject to dismissal based on the state statutes prohibiting class actions."); *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1336 (11th Cir. 2015) ("The bottom line is this. The Alabama statute restricting class actions, like the New York statute at issue in *Shady Grove*, does not apply in federal court. Rule 23 controls.").

115.    Due to Defendant's State law violations, Plaintiffs and Class members are entitled to recover from Defendant their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

## COUNT V
## VIOLATION OF CLASS MEMBERS' CONTRACTS AND/OR DEFENDANT'S UNJUST ENRICHMENT
### (brought on behalf of a Rule 23 Class)

116.    Plaintiffs realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

34

117.    To the extent that the Fair Labor Standards Act and/or State wage laws do not protect employees for a failure to compensate gap-time claims (claims for unpaid wages for hours worked up to forty which do not implicate statutory minimum wage laws), Plaintiffs and Class members assert such claims under breach of contract and unjust enrichment.

118.    When Plaintiff and Class members entered into employment with Defendant, the parties formed implied contracts, which contain inherent duties of good faith and fair dealings, to pay employees at agreed upon hourly rates for all hours worked.

119.    Plaintiffs and Class members provided services to Defendant as required under their agreements.  However, Defendant's failure to compensate all hours of work, including gap-time hours breached the Plaintiffs' and Class members' agreements.

120.    As a direct and proximate result of Defendant's failure to act fairly and in good faith, Plaintiffs and Class members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

121.    Moreover, absent an implied contract, by virtue of Defendant's conduct as alleged herein, and Plaintiffs' and Class members' performance, Defendant was unjustly enriched by the Plaintiffs' and Class members' conduct and did not compensate Plaintiffs and Class members fully.

122.    The circumstances are such that it would be inequitable to allow Defendant to retain the excess benefit from Plaintiffs and Class members conduct without paying fair value for it.

123.    As a direct and proximate result of Defendant's wrongful withholding of funds that should have been paid to Plaintiffs and Class members, they have sustained damages in an amount according to proof at trial.

124.     Defendant's withholding of proper compensation from employees was done with malice and in conscious disregard of Plaintiffs' and Class members' rights with the intent to cause injury to Plaintiffs and Class members. Plaintiffs and Class members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT VI
## INJUNCTIVE RELIEF

125.     Plaintiffs realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

126.     Defendant has provided a supposed arbitration agreement missing key contractual elements regarding formation.

127.     Defendant's arbitration provision remained unilaterally enforceable at Defendant's discretion against Plaintiffs and similarly situated employees.   Consequently, the mutual arbitration provision failed to provide the consideration promised and was unenforceable on its face.

128.     Plaintiffs seek the following relief on behalf of themselves and similarly situated employees: (i) class certification of the issue of whether Defendant's unsigned contract creates a legally binding agreement, and (ii) declaratory judgment on a class-wide basis that Defendant's arbitration provision is not a valid agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, FLSA Collective Plaintiffs, and Class members respectfully request that this Court grant the following relief:

36

a) A declaratory judgment that the practices complained of herein are unlawful under the FLSA, and State wage laws;

b) A declaratory judgment that the arbitration provision did not form a contract as to Plaintiffs and similarly situated employees.

c) An injunction against Defendant and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d) An award of unpaid overtime wages;

e) An award of unpaid wages, including overtime compensation at the proper rate of one-and-one-half times the regular rate of pay for hours worked in excess of forty (40) per workweek, due to time shaving due under the FLSA and State wage laws;

f) An award of statutory penalties as a result of Defendant's failure to comply with the State wage laws' wage notice and wage statement requirements;

g) An award of liquidated and/or punitive damages as a result of Defendant's willful failure to pay for overtime wage, pursuant to the FLSA and/or state wage laws;

h) In the alternative, an award of full amount of wrongfully withheld or diverted payments and punitive damages due to breach of contract and/or unjust enrichment;

i) An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert's fees;

j) Designation of Plaintiffs as Representative of the FLSA Collective Plaintiffs;

k) Designation of this action as a class action pursuant to F.R.C.P. 23;

l) Designation of Plaintiffs as Representative of the Class;

m) Designation of Plaintiff IORIS as Representative of the Subclass; and

n)  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated:  August 15, 2024

                                        Respectfully submitted,

                         By:  */s/ C.K. Lee*
                                   C.K. Lee, Esq.

                                   LEE LITIGATION GROUP, PLLC
                                   C.K. Lee (CL 4086)
                                   Anne Seelig (AS 3976)
                                   148 West 24th Street, 8th Floor
                                   New York, NY 10011
                                   Tel.: 212-465-1188
                                   Fax: 212-465-1181
                                   *Attorneys for Plaintiffs,*
                                   *FLSA Collective Plaintiffs, and the Class*