UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERTO DE IORIS and ANTONIO JEFFERSON, on behalf of themselves, FLSA Collective Plaintiffs, and the Class,

Plaintiffs,

- against -

CITIBANK, N.A.,

Defendant.

24-CV-6189 (VSB)

**OPINION & ORDER**

Appearances:

C.K. Lee
Lee Litigation Group, PLLC
New York, New York
*Counsel for Plaintiffs*

Brendan T. Killeen
Sam S. Shaulson
Morgan, Lewis & Bockius LLP
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

Before me is the motion of Defendant Citibank, N.A. ("Citi" or "Defendant") to compel arbitration and stay proceedings pending the completion of the arbitration. (Doc. 10.) Because I find that the parties entered into a valid agreement to arbitrate employment-related claims, Defendant's motion to compel arbitration and stay the case is GRANTED.

## I. Factual Background[1]

Plaintiff Roberto De Ioris ("De Ioris") is a former personal banker and private client relationship manager at Citi branches in New York. (Compl. ¶ 45.) Plaintiff Antonio Jefferson ("Jefferson," and together with De Ioris, "Plaintiffs") is a former teller and personal banker at a Citi branch in Chicago, Illinois. (*Id.* ¶ 48.) During their employment, Plaintiffs received and acknowledged Citi's U.S. Employee Handbook; De Ioris acknowledged the 2017 U.S. Employee Handbook and Jefferson acknowledged the 2022 U.S. Employee Handbook. (Docs. 12-1, 12-2.) Both the 2017 and 2022 Citi Employee Handbooks contain a similar[2] employment arbitration policy (the "Arbitration Policy"). (*Compare* Doc. 1-2 at 2–7 (2017 Arbitration Policy), *with id.* at 8–14 (2022 Arbitration Policy).) The employee handbook acknowledgments provided that the Arbitration Policy requires both Plaintiffs and Citi "to submit employment-related disputes to binding arbitration" and that the Plaintiffs "understand that [it is their] obligation to read these documents carefully." (Docs. 12-1, 12-2.)

The Arbitration Policy provides that it "applies to both [employees] and to Citi, and makes arbitration the required and exclusive forum for the resolution of all employment-related disputes (other than disputes which by federal law are precluded from arbitration) between [the

---

[1] The following facts are drawn from the allegations set forth in Plaintiffs' Class and Collective Action Complaint, (Doc. 1 (the "Complaint" or "Compl.").) "On a motion to compel arbitration, the Court accepts as true the allegations in the complaint that relate to the underlying dispute between the parties." *In re Document Techs. Litig.*, No. 17-CV-2405, 2017 WL 2840280, at *1 (S.D.N.Y. Apr. 27, 2017) (citing *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012)). My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings. Because motions to compel arbitration are evaluated under a standard "similar to that applicable [to] a motion for summary judgment," courts are permitted to consider "materials outside the complaint" in evaluating such motions. *Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 247 (E.D.N.Y. 2016) (quoting *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). The facts set forth in this section are uncontested unless otherwise noted. Therefore, this Opinion & Order also draws from the Declaration of Bill Crowley in support of the motion to compel arbitration, (Doc. 12), and the exhibits attached thereto, (Docs. 12-1–2), and the Declaration of C.K. Lee in opposition to the motion to compel arbitration, (Doc. 14), and the exhibits attached thereto, (Docs. 14-1–3.).

[2] The differences between the 2017 and 2022 arbitration policies are not material and do not impact my analysis.

employee] and Citi." (Doc. 1-2 at 2 (Scope of Policy); *see also id.* at 8 ("This Employment Arbitration Policy applies to both you and to Citi, and makes arbitration the required and exclusive forum for the resolution of all covered employment-related disputes (i.e., other than disputes which are expressly excluded from this Policy as described below) between you and Citi.").) The Arbitration Policy further provides that "by acknowledging receipt of this Policy and/or continuing [] employment with Citi after this Policy is distributed, [the employee is] accepting the Policy and waiving any legal right [the employee] may have to bring [] employment-related disputes in court and/or to have [] disputes heard by a jury. . . . [T]hese disputes include, without limitation, claims, demands or actions under . . . the Fair Labor Standards Act of 1938 . . . and any other federal, state or local statute, regulation or common-law doctrine regarding employment, . . . compensation, [or] breach of contract." (*Id.* at 8–9; *see also id.* at 2–3 ("Therefore, [the employee is] waiving [the] right to bring [] disputes in court or to have [] disputes heard by a jury. . . .[T]hese disputes include, without limitation, claims, demands or actions under . . . the Fair Labor Standards Act of 1938 . . . and any other federal, state or local statute, regulation or common-law doctrine regarding employment, . . . compensation, [or] breach of contract").) The Arbitration Policy also specifies that "arbitration on an individual basis . . . is the exclusive remedy for any employment-related claims which might otherwise be brought on a class, collective or representative action basis." (*Id.* at 3; *see also id.* at 9 ("[A]rbitration on an individual basis pursuant to this Policy is the exclusive remedy for any employment-related disputes covered by this Policy which might otherwise be brought on a class, collective or non-individual representative action basis.").) The Arbitration Policy further provides that the employee's "eligibility and consideration for merit increases, incentive and retention awards, equity awards, or the payment of any other compensation . . . as well as [the]

acceptance of employment with Citi, or [] continued employment with Citi . . . shall constitute consideration for and assent to [the employee's] obligations under" the Arbitration Policy. (*Id.* at 2, 8.) Finally, the Arbitration Policy provides that "Citi shall pay" the arbitration filing fees, hearing fees, arbitrator fees, and all ordinary and reasonable expenses of the arbitration. (*Id.* at 6, 13.)

## II. <u>Procedural History</u>

Plaintiffs filed the Complaint against Citi on August 15, 2024. (*See* Compl.) The Complaint—styled as a "Class and Collective Action Complaint"—alleges that Defendant underpaid and failed to pay overtime and wages, and failed to provide wage and hour notices to Plaintiffs in violation of: (i) the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"); (ii) the New York Wage Theft Protection Act, N.Y. Lab. Law ("NYLL") § 195(1) and (3); (iii) the Illinois Wage Payment and Collection Act, 820 ILCS §§ 115 *et. seq*. and the Illinois Minimum Wage Law, 820 ILCS §§ 105, *et seq*.; and (iv) the laws of forty-six other states. (*Id.* ¶¶ 1, 5, 81–115.) Plaintiffs assert that Citi "instituted a nationwide policy of requiring [employees] to self-report false start times, end times, and/or times for meal breaks," leading to employees "work[ing] beyond that reported time to complete all required work such as their quotas." (*Id.* ¶ 4.) Moreover, Plaintiffs claim that Defendant "failed to compensate employees when they clocked-in-and-out for short breaks lasting anywhere between 1-minute to 20-minutes in violation of 29 C.F.R. § 758.18 and State wage laws." (*Id.* ¶ 6.) Additionally, Plaintiffs assert that Citi did not provide proper and accurate wage statements "[d]ue to the failure to include all hours of work in . . . compensation, paystubs, and wage notices." (*Id.* ¶ 39.) Plaintiffs also assert claims for breach of contract and unjust enrichment, (*id.* ¶¶ 116–24), and injunctive relief to declare the Arbitration Policy invalid, (*id.* ¶¶ 125–28.)

On October 15, 2024, Defendant filed a motion to compel Plaintiffs to arbitrate their claims on an individual basis, (Doc. 10), along with an accompanying memorandum of law, (Doc. 11 ("Mem.")), as well as an accompanying declaration and exhibits, (Doc. 12). On October 29, 2024, Plaintiffs filed their opposition to the motion to compel arbitration, (Doc. 13 ("Opp'n")), as well as accompanying declarations and exhibits, (Docs. 14–16). On November 5, 2024, Defendant filed a reply brief in support of the motion to compel arbitration. (Doc. 17 ("Reply").)

## III. Legal Standard

The Federal Arbitration Act ("FAA") provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition [a] United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Upon the motion of either party to the agreement, the FAA, 9 U.S.C. §§ 1, *et seq.*, requires courts to compel arbitration in accordance with the terms of an arbitration agreement provided that there is no issue regarding its enforceability or validity. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing 9 U.S.C. § 2). "[A] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2.

A court must therefore first determine: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) ("[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of

the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue.").

Courts must evaluate a motion to compel arbitration pursuant to the FAA under a standard similar to the standard for a summary judgment motion. *See Bensadoun*, 316 F.3d at 175. "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Id.* at 175 (citing 9 U.S.C. § 4). However, the "party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010); *accord App. of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342–43 (S.D.N.Y. 2014) ("Whether it argues that arbitration is improper because the arbitration agreement is invalid under a defense to contract formation, or asserts that the arbitration contract does not encompass the claims at issue, either way, the resisting party shoulders the burden of proving its defense." (internal quotation marks omitted)). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

"[D]espite the strong federal policy favoring arbitration, arbitration remains a creature of contract." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019). Accordingly, "though the presumption in favor of arbitration is strong, the law still requires that parties actually agree to arbitration before it will order them to arbitrate a dispute." *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003). "[T]he ultimate question of whether the parties agreed to arbitrate is determined by state law." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002).

As this case concerns one plaintiff who is a Florida resident, one plaintiff who is an Illinois resident, and Citi, who is organized under the laws of South Dakota and is headquartered in New York, (Compl. ¶¶ 24–25, 27), I must determine which state's substantive law applies. The Arbitration Policy "shall be governed by and enforced under the Federal Arbitration Act." (Doc. 1-2 at 13 ¶ 21; *see id.* at 6 ¶ 21 ("This Policy shall be governed by the Federal Arbitration Act.").) "Where, as here, an arbitration agreement specifically states that it is governed by the FAA, courts in the Second Circuit 'appl[y] the choice-of-law rules of the state in which [they are] located—in this case, New York—' to determine the validity of the contract." *Spates v. Uber Techs., Inc.*, No. 21-CV-10155, 2023 WL 3506138, at *2 (S.D.N.Y. Mar. 31, 2023) (alterations in original) (quoting *Klein v. ATP Flight Sch., LLP*, No. 14-CV-1522, 2014 WL 3013294, at *5 (E.D.N.Y. July 3, 2014)). "Under New York choice of law rules, the first inquiry in a case presenting a potential choice of law issue is whether there is an actual conflict of laws on the issues presented." *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 566 (2d Cir. 2011) (citing *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001)). "If not, no choice of law analysis is necessary." *Id.* Moreover, "where the parties agree that New York law controls, this is sufficient to establish choice of law." *Id.*

Under New York law, the party seeking to compel arbitration bears the initial burden of proving that a valid arbitration agreement exists, *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 115 (2d Cir. 2025), but need only prove the existence of a valid arbitration agreement by a preponderance of the evidence, *see Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venez.*, 991 F.2d 42, 46 (2d Cir. 1993); *see also Torres v. Major Auto. Grp.*, No. 13-CV-0687, 2014 WL 4802985, at *5 (E.D.N.Y. Sept. 25, 2014) (recognizing that despite a requirement of "express, unequivocal agreement" between the parties to an arbitration agreement

under New York law, "the Second Circuit has applied the 'ordinary' preponderance of the evidence standard in determining whether parties whose agreements are governed by New York law have agreed to arbitrate") (quoting *Progressive*, 991 F.2d at 46).

## IV. <u>Discussion</u>

### A. *Choice of Law*

The parties do not expressly indicate whether they agree that New York law governs, but they rely on cases construing arbitration provisions according to New York law and thus analyze the validity of the Arbitration Policy according to New York law. (*See* Mem. 12–19; Opp'n 2–6; Reply 3–7.) Where the parties rely in their motion papers on New York law, as here, courts have routinely applied New York law. *See GuideOne Nat'l Ins. Co. v. Sys. 2000 Plumbing Serv., Inc.*, No. 22-CV-5018, 2025 WL 3707410, at *10 (S.D.N.Y. Dec. 22, 2025) (noting that the policy at issue did "not specify[] choice of law" but the "parties' proposed conclusions of law apply[] New York law"); *Holbrook Realty, LLC v. Peerless Ins. Co.*, No. 18-CV-1005, 2019 WL 4862073, at *6 n.6 (E.D.N.Y. Aug. 5, 2019), *report and recommendation adopted*, 2019 WL 4861888 (E.D.N.Y. Oct. 2, 2019) ("The Court notes that based upon the parties' almost exclusive reliance on New York law in their motion papers, they have implicitly agreed that New York law governs. Under such circumstances, the Court need not undertake a choice-of-law analysis and applies New York law to its analysis."); *Trade Pay LLC v. Horowitz*, No. 21-CV-442, 2023 WL 12030712, at *5 n.8 (E.D.N.Y. Oct. 5, 2023) ("While the parties do not expressly acknowledge that New York law controls, in advancing their respective points of law they cite cases interpreting New York law, which is tantamount to such an acknowledgment. In any event, under the totality of circumstances, the Court sees no reason why New York law should not be controlling."). Accordingly, I apply New York Law.

Even if the parties' legal analysis did not indicate their tacit agreement that New York law governs, "the state having the most significant relationship to the [Arbitration Policy] and parties, consistent with the Restatement (Second) of Conflict of Laws § 188, is" New York. *AIU Ins. Co. v. TIG Ins. Co*., 577 F. App'x 24, 26 (2d Cir. 2014) (summary order) (noting that "New York courts characterize this [choice of law] inquiry as a center of gravity or grouping of contacts analysis, and they consider the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties" (internal quotation marks omitted)). The Complaint explicitly alleges that "Defendant is headquartered in this District, and all the events, witnesses, policies, and procedures giving rise to this Complaint emanated from this District," (Compl. ¶ 9), and one Plaintiff previously worked in Citi's branch locations within New York City, (*id.* ¶¶ 26(c), 45), although as of the filing of the Complaint he resides in Florida, (*id.* ¶ 24). Further, the Complaint asserts that "[f]rom their New York headquarters, Defendant set wage policies for its approximately 645 branches which are located across the United States," (*id.* ¶ 3), "Defendant's branch locations are managed by the same executive management team operating from the same Headquarters in New York, which sets standardized policies and managerial training," (*id.* ¶ 26), and "Defendant centralizes payroll and other administrative roles at Defendant's headquarters in New York," (*id.*). The Complaint also seeks to certify a New York subclass and brings a claim under the NYLL. (*Id.* ¶¶ 37, 92–98.) Accordingly, the center of gravity lies in New York, and I will apply New York law.

### B. *Agreement to Arbitrate and Arbitrability*

"In deciding whether a dispute is arbitrable, [I] must answer two questions: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses

the claims at issue." *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (internal quotation marks omitted). Because Plaintiffs acknowledge that if I "determine that a valid contract exits, then the scope (e.g. whether on an individual or class basis) is under the purview of the arbitrator to decide," (Opp'n 12; *see also* Doc. 1-2 at 7 ¶ 27, 14 ¶ 27 ("Except as otherwise provided by this Policy, the arbitrator shall interpret and apply these procedures as they relate to the arbitrator's powers and duties.")), I need only analyze whether a valid agreement to arbitrate exists.

### 1. Agreement to Arbitrate

Plaintiffs do not dispute that they signed the Employee Handbook Acknowledgment which contained the Arbitration Policy as an appendix. (Docs. 12-1, 12-2; *see also* Opp'n 1 ("Defendant has filed a motion to compel arbitration . . ., arguing that Plaintiffs must arbitrate their claims pursuant to a signed acknowledgment form indicating each Plaintiffs' receipt of Defendant's handbook.").) Instead, Plaintiffs challenge the existence of a valid contract on the ground that the Arbitration Policy is unenforceable and illusory. (*See generally* Opp'n.) Specifically, Plaintiffs challenge the Arbitration Policy because Citi has the unilateral power[3] to modify or terminate it.[4] (*See id.* at 2–3.) To demonstrate this, Plaintiffs posit that "[i]f Plaintiffs sought to arbitrate their claims against Defendant, but Defendant refused to pay the American

[3] The Arbitration Policy provides: "Citi reserves the right to revise, amend, modify or discontinue the Policy at any time in its sole discretion with 30 calendar days' written notice. Such amendments may be made by publishing them in the Handbook or by separate release to employees and shall be effective 30 calendar days after such amendments are provided to employees and will apply prospectively only. *Your continuation of employment after receiving such amendments shall be deemed acceptance of the amended terms*." (Doc. 1-2 at 7 ¶ 26 (emphasis in original); *see also id.* at 13–14 ¶ 26.)

[4] "[S]ome district courts in this Circuit have determined that a challenge to a unilateral modification clause is a challenge to the contract as a whole, and must be referred to an arbitrator. . . . However, because Plaintiff[s'] challenge may be read to target only the [A]rbitration [Policy, and not the Employee Handbook], including the modification clause therein, and not the contract as a whole, [I] entertain[] Plaintiff[s'] argument." *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 106 (E.D.N.Y. 2015).

Arbitration Association ('AAA'), Plaintiffs would have no remedies." (*Id.* at 2.) Plaintiffs acknowledge that the Arbitration Policy "does not provide an ***express*** right to terminate," the Arbitration Policy, but allege that "in practice, Defendant retains the same unilateral power to terminate [the Arbitration Policy] as if memorialized as a contractual term." (*Id.* at 3 (emphasis in original); *see also id.* ("Though the Handbook's Arbitration Provision gives the appearance of binding Defendants to a mutual agreement to arbitrate claims, in actuality it leaves Defendant with full discretion as to whether the arbitration agreement will be enforced. This is because Plaintiffs have no remedy in the event of Defendant's breach.").) Thus, Plaintiffs assert that the Arbitration Policy is invalid for lack of consideration because Citi can unilaterally revise or terminate the Arbitration Policy or refuse to comply with its terms and Plaintiffs would not have a potential remedy in the event of Citi's breach. (*Id.* at 1–9.) Citi defends the Arbitration Policy by arguing that: (1) Plaintiffs' argument is based on a hypothetical, speculative scenario in which Citi refuses to pay arbitration fees after Plaintiffs seek to enforce arbitration, (Reply 1, 3–5); (2) the Arbitration Policy requires Citi to pay the arbitration fees, (*id.* at 1, 6–7); (3) Plaintiffs would have multiple remedies for any breach, (*id.* at 1, 7–8); and (4) mutuality of remedy is not required and, even if it were, there is mutuality here, (*id.* at 1, 6–8).

First, Citi is correct, Plaintiffs' argument is purely hypothetical as it is Plaintiffs who are opposing arbitrating and refusing to arbitrate their claims, while Citi seeks to compel arbitration. Plaintiffs do not allege, because there is no factual basis, that Citi will not pay the arbitration fees. To the contrary, Citi acknowledges that the "Arbitration Policy obligates Citi to pay the arbitration fees" and "[t]here is no basis to conclude that Citi would suddenly break its long track record of paying arbitration fees." (Reply 1–2; *see also id.* at 6 ("Here, Citi agreed by contract to pay the arbitration fees.").) In fact, Citi asserted that it "has maintained its Employment

Arbitration Policy for more than two decades, without any indication that Citi does not comply with its agreement to arbitrate covered claims and pay the required arbitration fees." (Mem. 11.) Moreover, Plaintiffs cite no caselaw, and I cannot find any, to support their claim that non-payment of arbitration fees would render the Arbitration Policy illusory for lack of consideration, rather than a breach of Citi's obligations; indeed, Plaintiffs specifically note that nonpayment would be a "breach," (Opp'n 8 ("Without a potential remedy in the event of Defendant's breach (by not paying arbitration fees), this material consideration was illusory.")). Speculating that a party who has acknowledged that it is obligated to pay arbitration fees and expenses will not pay such fees and expenses, and failing to support this assertion with anything other than a mere hypothetical scenario, is insufficient to invalidate an arbitration agreement.

Second, the Arbitration Policy is supported by valid consideration because it requires both Plaintiffs and Citi to arbitrate employment-related disputes. *See Abeona Therapeutics, Inc. v. EB Rsch. P'ship, Inc.*, No. 18-CV-10889, 2019 WL 623864, at *4 (S.D.N.Y. Feb. 14, 2019) ("Under New York contract law, mutual promises to arbitrate constitute consideration sufficient to support an arbitration agreement." (alteration adopted and internal quotation marks omitted)); *Davis v. Crothall Healthcare, Inc.*, No. 22-CV-07196, 2023 WL 6519603, at *4 (S.D.N.Y. July 7, 2023), *report and recommendation adopted*, 2023 WL 6237845 (S.D.N.Y. Sept. 26, 2023) ("[T]he Arbitration Agreement by itself contains sufficient consideration because it mutually binds both parties to submit claims exclusively to arbitration."); Bassett, 93 F. Supp. 3d at 104 (E.D.N.Y. 2015) ("Mutual promises to arbitrate, while not necessary as consideration to support an agreement to arbitrate, can be sufficient consideration to support an arbitration agreement.") (collecting cases).[5] The Arbitration Policy expressly provides that it "applies to both you and to

---

[5] Plaintiffs cite no cases from this District to support their argument that no contract was formed due to an alleged lack of consideration in the mutual agreement to arbitrate. (*See* Opp'n 2–11.) Plaintiffs only cite to nonbinding out-

Citi, and makes arbitration the required and exclusive forum for the resolution of all employment-related disputes (other than disputes which by federal law are precluded from arbitration) between you and Citi." (Doc. 1-2 at 2 (Scope of Policy); *id.* at 8 ("This Employment Arbitration Policy applies to both you and to Citi, and makes arbitration the required and exclusive forum for the resolution of all covered employment-related disputes (i.e., other than disputes which are expressly excluded from this Policy as described below) between you and Citi."); *see also id.* at 2, 8 (Statement of Intent noting that the Arbitration Policy "is applicable to all employment-related disputes, whether initiated by you or by Citi").) "That Defendant was free to unilaterally modify or cancel the [Arbitration Policy] with thirty days' notice to employees does not invalidate that consideration because, upon cancellation or modification, the arbitration obligation still applies to all claims arising during the notification period." *Davis*, 2018 WL 4516668, at *6; *see also* Doc. 1-2 at 7 ¶ 26, 13–14 ¶ 26 (providing that Citi could unilaterally "revise, amend, modify or discontinue" the Arbitration Policy "with 30 calendar days' written notice" and "shall be effective 30 calendar days after such amendments are provided to employees and will apply prospectively only"). Because Plaintiffs and Citi mutually agreed to arbitrate their employment-related disputes, the Arbitration Policy is supported by adequate consideration.

Third, the Arbitration Policy requires Citi to pay the majority of fees and costs for an arbitration; therefore, despite Plaintiffs' argument, (Opp'n 2–7), if Plaintiffs sought to arbitrate

---

of-Circuit cases to support their consideration argument, and, in any event, those cases are not persuasive because Plaintiffs themselves acknowledge that "courts across the country (though not New York State Courts) have found that an agreement requiring arbitration as to the employee without mutuality to compel arbitration as to the employer" are invalid. (*Id.* at 7.) However, "both the Court of Appeals for the Second Circuit and the New York State Court of Appeals have enforced arbitration clauses even where only one party has the capacity to trigger arbitration, expressly rejecting the notion that mutuality is required in the arbitration context." *In re Generali COVID-19 Travel Ins. Litig.*, 577 F. Supp. 3d 284, 292 (S.D.N.Y. 2021) (collecting cases).

their claims against Citi but Citi refused to pay the AAA, Plaintiffs would have several available remedies to avail themselves of, including compelling Citi to pay the arbitration fees, seeking sanctions against Citi, or proceeding with arbitration and seeking reimbursement.[6] Section 23 of the Arbitration Policy expressly requires Citi to "pay any filing fee," "hearing fee," "arbitrator fee for the hearing," and "all [] ordinary and reasonable expenses of the arbitration, including hearing room expenses; travel expenses of the arbitrator, AAA or FINRA representatives, as applicable; and any witness produced at the arbitrator's direction." (Doc. 1-2 at 6 ¶ 23(d), 13 ¶ 23(e).) Moreover, the allocation of expenses and fees "may not be disturbed by the arbitrator except where the arbitrator determines that a party's claims were frivolous or were asserted in bad faith." (*Id.* at 7 ¶ 23, 13 ¶ 23.) Therefore, "if an issue should arise during arbitration concerning fees imposed on plaintiffs, it can be addressed adequately by the Court at the

[6] I note that Plaintiffs assert that it is "unrealistic for courts to expect low-wage earners (or their counsel) to pay for arbitration costs that may exceed $100,000.00, when their individual liability is low," (Opp'n 4); however, this assertion does not vitiate Plaintiffs' ability to pursue arbitration. The mere "risk" that Plaintiffs "will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement," *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000), especially when the Arbitration Policy allocates many of the costs and fees to Citi, (Doc. 1-2 at 6 ¶ 23, 13 ¶ 23), and Citi has acknowledged its "obligat[ion] . . . to pay the arbitration fees, (Mem. 1–2; *see also* Reply 1 (noting that Plaintiffs "do not dispute that the Employment Arbitration Policy obligates Citi to pay the arbitration fees")). *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013) ("[T]he fact that [arbitration] is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy." (emphasis in original)); *Green Tree Fin. Corp.*, 531 U.S. at 90 (refusing to invalidate an arbitration agreement although "[i]t may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum" where "the record does not show that [the litigant] will bear [arbitration] costs if she goes to arbitration"); *see also Lee v. Engel Burman Grande Care at Jericho, LLC*, No. 20-CV-3093, 2021 WL 3725986, at *5 (E.D.N.Y. Aug. 23, 2021) (rejecting the plaintiff's argument that a dispute resolution agreement was unconscionable because it is ambiguous as to which party would pay the arbitrator's compensation, although the agreement allocated the costs of the filing fee and arbitrator's expenses to the defendants, because "[e]ven if the cost of the arbitrator's compensation were shared, plaintiff has put forward no evidence that the cost would be prohibitive"); *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 411–12 (S.D.N.Y. 2003) ("As an initial matter, defendants have offered to pay all arbitration fees, hearing fees, and arbitrators' fees, and to forgo any right to seek prevailing party attorneys' fees in arbitration. Thus, plaintiffs cannot possibly show that the arbitration costs could preclude them from effectively vindicating their federal statutory rights in arbitration."). I note that despite Plaintiffs' counsel providing examples of his clients' former employers' refusal to pay arbitration fees, Plaintiffs do not identify any cases where Citi refused to pay arbitration fees, despite the arbitration policy existing for several years. (*See* Opp'n 6–7.) Moreover, Citi states that it "has maintained its Employment Arbitration Policy for more than two decades, without any indication that Citi does not comply with its agreement to arbitrate covered claims and pay the required arbitration fees." (Mem. 11.)

arbitration award enforcement stage. Thus, [P]laintiffs are not left without recourse if they believe that they were not able to vindicate all their statutory rights in arbitration due to costs or fees imposed on them." *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d at 413.

Fourth, Citi's unilateral power to modify the terms of the Arbitration Policy is insufficient, without more, to render the Arbitration Policy illusory where Citi's power is subject to sufficient limitations, including an obligation to provide thirty calendar days' written notice of any revisions and the implied duty of good faith and fair dealing. Plaintiffs assert that the Arbitration Policy is "illusory and unconscionable"[7] because it "permits Defendants to terminate their obligation to arbitrate at will." (Opp'n 11.) However, "[u]nder New York law, a contract is not illusory merely because its terms give discretion to one party to the contract, as every contract encompasses the implied duty of good faith and fair dealing." *Lebowitz v. Dow Jones & Co.*, 508 F. App'x 83, 84 (2d Cir. 2013) (summary order) (citations omitted); *see also Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 295 (S.D.N.Y. 2025) ("Indeed, the implied covenant of good faith ordinarily works to save provisions allowing *unilateral* modifications . . . from being considered illusory, since the covenant bars the party with unilateral power to modify

[7] To find unconscionability, "there must be a showing that . . . a contract is both procedurally and substantially unconscionable." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (internal quotation marks omitted). Substantive unconscionability requires terms that unreasonably favor one party and procedural unconscionability involves an absence of meaningful choice at the time the contract was made. *Id.* at 121–22. However, other than the passing reference to the Arbitration Policy being "illusory and unconscionable," (Opp'n 11), Plaintiffs do not separately argue that Citi's unilateral ability to revise, amend, modify or discontinue the Arbitration Policy renders it unconscionable. Instead, Plaintiffs' arguments are tied to their challenge that the Arbitration Policy is illusory, and they do not argue that the Arbitration Policy is procedurally unconscionable. In any event, the Arbitration Policy "is applicable to all employment-related disputes, whether initiated by [Plaintiffs] or by Citi," (Doc. 1-2 at 2, 8 (Statement of Intent)), and "there is no evidence that Defendant put Plaintiff[s] over a barrel with respect to the execution of the contract at issue," *Velez v. Credit One Bank*, No. 15-CV-4752, 2016 WL 324963, at *6 (E.D.N.Y. Jan. 25, 2016) (internal quotation marks omitted); *see also id.* at *4–6 (rejecting the plaintiff's argument that the arbitration agreement is unconscionable where "[t]he terms of the arbitration agreement b[ou]nd both parties" and the plaintiff "fail[ed] to show that she lacked a meaningful choice"). *See also Gilbert v. Dell Techs., Inc.*, 415 F. Supp. 3d 389, 399 (S.D.N.Y. 2019) ("It is not unconscionable to require the plaintiff to arbitrate in accordance with the terms of the arbitration policy that the plaintiff agreed to and which the defendant seeks to enforce without any changes.").

from using that power capriciously." (emphasis in original)); *Nicholas v. Wayfair Inc.*, 410 F. Supp. 3d 448, 456 (E.D.N.Y. 2019) ("The unilateral right to modify an agreement, without more, does not render the agreement unenforceable."). "Thus, the analysis of whether a unilateral right to modify an arbitration agreement renders that agreement illusory and unenforceable turns on reasonableness and fair notice." *Bassett*, 93 F. Supp. 3d at 100, 107 (determining that an arbitration provision that required the defendant to provide "written notice within 30 days" of any unilateral changes, gave plaintiffs the ability to "reject[] any future change," and that subjected the defendant to the implied duty of good faith and fair dealing was not illusory).

The Arbitration Policy provides that Citi may unilaterally "revise, amend, modify or discontinue" the Arbitration Policy "with 30 calendar days' written notice" by publishing the amendment "in the Handbook or by separate release to employees" and that an amendment "shall be effective 30 calendar days after such amendments are provided to employees and will apply prospectively only." (Doc. 1-2 at 7 ¶ 26, 13–14 ¶ 26.) "[C]ourts in this circuit . . . have rejected Plaintiff's argument and found arbitration provisions similar to the one here valid." *Gonzalez v. Cheesecake Factory Restaurants, Inc.*, No. 21-CV-5017, 2024 WL 989881, at *5 (E.D.N.Y. Mar. 6, 2024) (rejecting the plaintiff's argument that the arbitration agreement was illusory simply because it provided that the defendant could "in its sole discretion, change, rescind or add to any policies, benefits or practices described in this handbook") (collecting cases); *see also Bassett*, 93 F. Supp. 3d at 106 ("[T]he arbitration provision was not invalid as illusory simply because [the defendant] had the unilateral right to modify the agreement. Under New York . . . law, the fact that one party to an arbitration agreement has the unilateral right to modify that agreement does not automatically render the agreement illusory, as the discretionary power to modify or terminate an agreement carries with it the duty to exercise that power in good

faith and fairly." (internal quotation marks omitted)); *Valle v. ATM Nat., LLC*, No. 14-CV-7993, 2015 WL 413449, at *5–6 (S.D.N.Y. Jan. 30, 2015) (rejecting the argument that the provision giving the defendant "the exclusive right to change its terms renders [the arbitration agreement] illusory" because the provision stated that the defendant "may change, amend or supplement th[e] Agreement at any time as allowed by applicable law," which "constrains [the defendant's] discretion to change contractual terms with standard principles of contract law and the implied covenant of good faith" and plaintiffs had at least forty-five days to opt out of the arbitration agreement).

Moreover, Citi limited the application of the Arbitration Policy "to the fullest extent permitted by law," (Doc. 1-2 at 7 ¶ 28, 14 ¶ 28), "which includes [Citi's] obligations under the implied duty of good faith and fair dealing." *Bassett*, 93 F. Supp. 3d at 107. Plaintiffs do not assert that Citi conducted itself in a matter inconsistent with its duty of good faith or that the 30-day notice period is unconscionable or impracticable. Further, "[t]here is no showing that [Citi] did or contemplated using [its] purported power to unilaterally modify the [Arbitration Policy] during the period of the [Plaintiffs'] employment. There is thus no showing that [Citi] acted unreasonably or in bad faith with respect to the purported unilateral modification provisions of the [Arbitration Policy]." *Woo Jung Cho v. Cinereach Ltd.*, No. 19-CV-513, 2020 WL 1330655, at *5 (S.D.N.Y. Mar. 23, 2020). Moreover, "if the provision of the arbitration agreement that allowed a discretionary change by the employer were invalid, it could be severed from the remainder of the contract." *Gilbert*, 415 F. Supp. 3d at 399; *see also Ragone*, 595 F. 3d at 124–25 ("[T]he appropriate remedy when a court is faced with a plainly unconscionable provision of an arbitration agreement—one which by itself would actually preclude a plaintiff from pursuing her statutory rights—is to sever the improper provision of the arbitration agreement, rather than

void the entire agreement." (internal quotation marks omitted)); *Woo Jung Cho*, 2020 WL 1330655, at *5 ("[T]o the extent that the unilateral modification provisions of the Personnel Policy were invalid, they would be severed from the arbitration provision."). Thus, the fact that Citi may unilaterally modify the terms of the Arbitration Policy does not, without more, render the Arbitration Policy illusory and unenforceable.

Accordingly, for the reasons stated above, I find that the Arbitration Policy is binding and enforceable.

**2. Arbitrability of Plaintiff's Claims**

Plaintiffs concede that if I determine that the Arbitration Policy is a valid and enforceable contract, "all other disputes as to the contract's terms are delegated to the arbitrator" because the Arbitration Policy contains a delegation of scope and arbitrability to the arbitrator. (Opp'n 12; *see also* Doc. 1-2 at 7 ¶ 27, 14 ¶ 27 ("Except as otherwise provided by this Policy, the arbitrator shall interpret and apply these procedures as they relate to the arbitrator's powers and duties; all other procedures shall be interpreted and applied by the AAA or FINRA, as applicable. Except as otherwise expressly agreed upon, and except as otherwise provided by this Policy, any dispute as to the arbitrability of a particular claim made pursuant to this Policy shall be resolved in arbitration.").)

Even if Plaintiffs had not conceded the arbitrability of their claims, I would determine that Plaintiffs' claims—related to Citi's alleged conduct of operating a nationwide policy of requiring Plaintiffs to self-report false start times, end times, and/or times for meal breaks leading to the underpayment of wages and overtime and Citi's alleged failure to provide proper wage notices—are employment-related disputes which are arbitrable under the Arbitration Policy. The Arbitration Policy broadly requires arbitration for any "employment-related

disputes" including those under "the Fair Labor Standards Act of 1938 . . . and any other federal, state or local statute, regulation or common-law doctrine regarding employment, . . . compensation, [or] breach of contract." (Doc. 1-2 at 2–3, 8–9 (Scope of Policy).) Indeed, Plaintiffs' causes of action for (i) violation of the FLSA, (Compl. ¶¶ 81–91), (ii) violation of the NYLL, (*id.* ¶¶ 92–98), (iii) violation of the Illinois Wage Payment and Collection Act and the Illinois Minimum Wage Law, (*id.* ¶¶ 99–103), (iv) violation of state wage and hour laws, (*id.* ¶¶ 104–15), (v) breach of contract and unjust enrichment, (*id.* ¶¶ 116–24), and (vi) injunctive relief, (*id.* ¶¶ 125–28), are explicitly enumerated among the types of claims that must be submitted to arbitration, because they are "employment-related disputes . . . regarding employment . . . the terms and conditions of employment, . . . compensation [and] breach of contract," (*see* Doc. 1-2 at 2–3, 8–9 (Scope of Policy).) Accordingly, Plaintiffs' claims must proceed in arbitration.

### C. *Stay or Dismissal of the Action*

Having determined that the Arbitration Policy is valid and enforceable, and that Plaintiffs' claims fall within the scope of a valid arbitration agreement, I must determine whether the action should be dismissed or stayed. Citi's motion to compel includes a request to stay this action pending the outcome of arbitration proceedings. (Doc. 10 at 1.) The FAA "requires a stay of proceedings when all claims are referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 343 (2d Cir. 2015); *see also Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). A stay "enables parties to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation, and generally precludes judicial interference until there is a final award." *Katz*, 794 F.3d at 346. Thus, I will stay, rather than dismiss, the action pending arbitration.

## V. <u>Conclusion</u>

For the foregoing reasons, Defendant's motion to compel arbitration is GRANTED and I refer Plaintiffs' claims to arbitration. The matter is hereby STAYED pending the completion of arbitration. The parties are directed to submit a joint status letter 120 days from the date of this Opinion & Order, advising me as to the status of arbitration proceedings.

The Clerk of Court is respectfully directed to terminate Document 10.

SO ORDERED.

Dated: July 23, 2026
New York, New York

Vernon Broderick

Vernon S. Broderick
United States District Judge